Place v. Dodge.

### Doctor S. Place and John H. Whiteside v. Chester C. Dodge.

1. INTEREST—*As Damages—Rule of Computation.*—The legal rate of interest prevailing in this State is the limit of damages recoverable on account of holding money idle  The only loss the law contemplates under such circumstances is the loss of lawful interest.

Memorandum.—Action for deceit.  Appeal from the Circuit Court of Cook County; the Hon. THOMAS G. WINDES, Judge, presiding.  Heard in this court at the March term, 1894.  Reversed and remanded.  Opinion filed April 30, 1894.

The opinion states the case.

KERR & BARR, attorneys for appellants; JOHN P. WILSON, of counsel.

ROBERT VAN SANDS, attorney for appellee; JOHN H. WHIPPLE, of counsel.

MR. PRESIDING JUSTICE SHEPARD DELIVERED THE OPINION OF THE COURT.

This is an action on the case for deceit by the appellants, in falsely representing to the appellee that they had au-

thority to sell to him a certain lot of land in Chicago, for the owner thereof, residing in Cincinnati.

We do not consider it necessary to review the evidence. There was sufficient evidence tending to establish the fact of such an assumption and representation of authority by the appellants, without strict warrant therefor, and such a belief by appellee in appellants' representations of authority, without knowledge by him of their limited authority, as to preclude a court of review from disturbing the special findings of the jury that appellee did not know who the owner was, or the terms upon which he had authorized appellants to sell the lot, and that appellants did make false and willful representations to the appellee touching their authority in the matter.

The amount of damages recovered is the only question we feel justified in reviewing.

It appears that immediately after appellee signed the contract to purchase the lot, he converted into money a sufficient amount of interest-bearing securities, held by him, to place himself in funds to pay for the lot as soon as the title should be examined and the deed be ready for delivery. Such securities bore ten per cent interest, and it is plain from the items of damage testified to by appellee, that $460.09 as interest on the purchase price of the lot, at the rate of ten per cent per annum, for the time it was kept on hand, was allowed by the jury in making up the total of their verdict, and entered into the judgment.

This was erroneous. The legal rate of interest prevailing in this State was the limit of damages recoverable on account of holding the money idle.

The only loss the law contemplates under such circumstances is the loss of lawful interest. Sedgwick on Damages, Secs. 174, 179.

It would make no difference whether government bonds, paying only three per cent interest, or bank stocks, paying twenty per cent dividends, were converted; the loss that the law would take into account, would, in either event, be the loss of interest at the statutory rate for the time the money

was held, no more and no less.  And the rule would be the same although no securities were converted, but money already on hand were held for the purpose.

Counsel for appellee makes an ingenious suggestion as to how the jury might have made up the $460.09, which was testified to by his client as the interest he lost by keeping the purchase price on hand, but we may not guess what the jury might have done, when we have in the record an exact statement of his client, which includes that particular item, and foots up the precise amount of the verdict.

It is also, in the same way, plain that the verdict and judgment include $149 for master's and attorney's fees in the chancery suit of Strobridge, the owner of the lot, against the appellee, to set aside, as a cloud upon the owner's title, the contract which appellants had made with appellee for the sale of the lot, and which the appellee had filed for record after he knew that Strobridge had repudiated the contract and refused to carry out its terms.  To that bill in chancery the appellee filed a cross-bill for specific perform-ance.

Most, if not all, of such expenses, paid by appellee, were of his own incurring, in a litigious attempt by him to en-force an unauthorized contract, by recording the contract after he was informed that the owner repudiated it, and compelling a suit in chancery to remove a cloud he himself had created upon the owner's title, and by filing in that suit a cross-bill to enforce performance of the contract.

Except that counsel for appellants expressly admitted, on the trial below, that he made no objection to the master's fees, and in his brief here tacitly admits the correctness of the attorney's fees paid by appellee in that litigation, we should be disposed to criticise the including of such expenses in the judgment.

The attorney's fees paid by the appellee for examining the abstract of title were properly included in the verdict and judgment, and so would, also, be lawful interest on the purchase money, held by the appellee, from the date he con-verted his securities into money, February 1, 1888, to the

date in February, 1889, when the bill was filed by the owner, to remove the contract from the record as a cloud upon his title. After that date, appellee was not justified in holding his money to perform a contract repudiated in so solemn a manner as by that suit. His right of action against the appellants then became fully ripened, and he could not by a longer holding of the funds increase his damages against them.

For the errors indicated, the judgment will be reversed and the cause remanded, unless the appellee shall, in this court, within ten days, enter a remittitur from said judgment, as of the date thereof, of all excess of the judgment over the sum of $174, increased by the addition of interest on $2,625, at six per cent per annum, from February 1, 1888, to the date of filing said bill in chancery.